414 So.2d 301 (1982)
Richard Frank MARTINEZ a/k/a Rick Hernandez, Appellant,
v.
STATE of Florida, Appellee.
No. 80-636.
District Court of Appeal of Florida, Fourth District.
April 28, 1982.
Rehearing Denied June 16, 1982.
Paul Morris of Law Office of Paul Morris, Miami, for appellant.
Jim Smith, Atty. Gen., Tallahassee, Trela J. White and Ondina Felipe, Asst. Attys. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
The trial court refused to suppress a quantity of cocaine that appellant Martinez had abandoned while fleeing the police after a "drug courier profile" detention at Fort Lauderdale International Airport. Appellant seeks reversal of a judgment of guilty of possession of cocaine[1] upon the ground that the order denying his motion to suppress was erroneous.
The trial judge entered a detailed order containing findings of fact and conclusions of law denying the motion to suppress. In the pertinent parts of that order the court stated:
1. That on about July 28, 1978, the Defendant, Richard Frank Martinez, was arrested at Fort Lauderdale International Airport by special agents of the Broward County Sheriff's Department who were acting initially under the "narcotic courier profile" which had been developed by the Drug Enforcement Administration of the Federal Government, and, subsequently, been employed and adopted by the Broward County Sheriff's Department for use at the Fort Lauderdale International Airport.
2. The Court specifically finds that on or about the day in question, the Defendant presented himself at the Delta Airlines ticket counter, where he stepped in line and obtained a ticket for passage by airline to Tampa, Florida; that he had a shoulder bag as luggage and paid for his ticket in cash; that he was nervous and appeared apprehensive. By looking around, he was "eye-balled" by Officer Roger Julianelli. That, based on the above conditions, the officer and his partner followed the Defendant while he left the Delta Airline ticket counter and proceeded through the airline security electronic baggage checking apparatus and kept looking back at the officers while doing so.

*302 3. That, after the luggage passed through the electronic security check and it was picked up by the Defendant, he was approached by the officers who stated to the Defendant that they were police officers investigating narcotics' violations at the airport, and that they wished to speak to him and asked the Defendant for identification.
4. That the Defendant was nervous, upset, began to sweat and was unable to intelligently answer the questions posed by the officers. Further, the Defendant told the officers that his name was Martinez and that he had no identification on him and that the name on the airline ticket was that of Hernandez which was in conflict with that of the Defendant. The ticket held by the Defendant was surrendered at the request of the officers. Clearly, the Defendant did not consent to the initial stop; therefore, the Court considers this a detention.
5. That the Defendant was escorted by officers into a private room. Once in the room, the Defendant attempted to flee by running into a restricted area, causing Detective Julianelli to follow in pursuit of the Defendant.
6. That Detective Julianelli ran after the Defendant and, after a short chase, apprehended the Defendant, who had crawled under a baggage cart. At this time the Defendant removed the cocaine from his leg area and cast it aside.
The trial judge's finding that Martinez was detained is supported by Martinez's testimony that, after the officers took his ticket and searched his shoulder bag with his consent, they asked if he would submit to a body search. He refused because he was in a hurry to catch his plane. When he refused the officers took him downstairs for further questioning. When he asked, "What is going on?" one of the officers told him he was being detained and he was taken by the arm and led downstairs.
In reviewing the order in question, it is necessary for us to determine whether the police had a reasonably founded suspicion to detain Martinez at the time he departed the baggage room. If not, he was free to leave and the police had no right to chase him as they did.
In Reid v. Georgia, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), the Supreme Court held that as a matter of law the police did not have reasonable suspicion to detain Reid. The scenario in that case is quite similar to the one confronting us. In Reid, Federal Drug Enforcement Administration officers observed Reid deplane an early morning flight from Fort Lauderdale at the Atlanta Airport. As they came off the plane another man, Williams, was separated from Reid by several other persons. Each of these men carried a shoulder bag. As they proceeded through the concourse past the baggage claim area, Reid occasionally looked backward toward Williams. When they reached the main lobby Williams caught up to Reid; they conversed momentarily; and then they left the terminal together. A DEA agent approached them outside the building, identified himself as a federal narcotics agent, and asked them to show their airline tickets, which they did. It appeared the tickets had been purchased with Reid's credit card and that the men spent only one day in Fort Lauderdale. Reid and Williams appeared nervous during the encounter. When asked if they would return to the terminal and consent to a search of their persons and shoulder bags, Reid nodded his head affirmatively and Williams responded, "Yeah, okay." As the group was entering the terminal, Reid fled and abandoned his shoulder bag before he was apprehended.
The trial court in Reid entered an order granting a motion to suppress, which was reversed by the Georgia Court of Appeals, the latter court holding that the DEA agents had lawfully seized Reid when he was approached outside the terminal building. The Supreme Court of the United States vacated the judgment of the Georgia Court of Appeals because the Supreme Court held it could not approve the Georgia *303 Court of Appeals' determination that the DEA agents lawfully seized Reid when he was approached outside the airline terminal. The judgment of the Court of Appeals was therefore vacated and the cause remanded for further proceedings.
Only two material differences exist between the drug courier profile factors in Reid and this case. In Reid the subject was inbound from Fort Lauderdale and the DEA agent learned from the tickets that the trip was a one day turn-around trip. In the present case Martinez was outbound to Tampa and had used a false name on the ticket. In our judgment these differences are not sufficient to permit us to conclude that the officers reasonably suspected Martinez of criminal activity. Absent reasonably founded suspicion, the officers had no authority to detain Martinez. Thus the trial judge erred when he found they had such authority. That detention invalidated anything that transpired after Martinez departed the baggage room. Therefore, the motion to suppress should have been granted.
Accordingly, upon authority of Reid v. Georgia, supra, we are constrained to reverse the judgment appealed from and remand the cause with directions to discharge the appellant.
REVERSED AND REMANDED with directions.
GLICKSTEIN, J., and PEARSON, DANIEL S., Associate Judge, concur.
NOTES
[1] The judgment was entered pursuant to a nolo contendere plea in which Martinez preserved the right to question the validity of the order of suppression on appeal.