433 So.2d 545 (1983)
Gilbert Lee HORVITZ, Appellant,
v.
STATE of Florida, Appellee.
No. 82-1508.
District Court of Appeal of Florida, Fourth District.
May 11, 1983.
Rehearing Denied July 20, 1983.
*546 H. Dohn Williams, Jr., Hollywood, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Marlyn J. Altman, Asst. Atty. Gen., West Palm Beach, for appellee.
BERANEK, Judge.
The defendant appeals his conviction and sentence for trafficking in cocaine under Section 893.135, Florida Statutes (1981). This is an airport drug courier profile seizure. Appellant raises numerous points and we reverse.
The appellant, Gilbert Lee Horvitz, entered the Delta Airlines Terminal at the Fort Lauderdale/Hollywood Airport on January 12, 1981, carrying a purse-size shoulder bag. Agent Carl, of the Pompano Beach Police Department, observed appellant enter the building. Apparently, for unexplained reasons, he was immediately under suspicion. The agent positioned himself behind appellant in line. Horvitz purchased a one-way ticket to Philadelphia with cash and left the terminal to get his briefcase from his car. He re-entered the airport accompanied by his wife and they both sat down in an area near the metal detection device.
Agent Carl had alerted two other agents, Capone and DeFuria, who positioned themselves around the appellant and his wife. All of the agents were in "plain clothes"; the males wore beards and jeans. Eye contact was made between the agents and Horvitz. As the agents stared at him, he "looked" nervous. Appellant then proceeded down the escalator in a direction away from the departure gates. The three agents observed Horvitz leave the terminal building before his scheduled flight departure and they made contact with him before he reached the parking lot. The agents identified themselves as police officers and indicated they wanted to speak with Horvitz about narcotics. The appellant indicated that he wanted to leave. The agents stated that they were looking for narcotics and wanted to look inside Horvitz' briefcase and shoulder bag. They requested appellant's ticket and identification, which he gave them. The names on both matched. The officers returned the appellant's identification but kept his airline ticket.
The agents then stated that if they could look inside appellant's bag, he could leave. At some point before Horvitz actually opened his bag, he requested permission to call an attorney. The agents responded that it was not part of their procedure at that time to obtain an attorney for him and pressed him to open the briefcase.
Horvitz proceeded to open his briefcase and several packages wrapped in Christmas paper were observed. Horvitz told the agents not to touch the packages but an agent picked one up and smelled it. He testified that it smelled like cocaine and that appellant was then asked to accompany the agents to the narcotics division security office inside the airport. After a two-hour wait, the customs narcotics search dog arrived and picked out appellant's attache case from a lineup of three or four attache cases. A search warrant was obtained, the cocaine was confiscated, and Horvitz was arrested.
It was the appellant's contention throughout all the proceedings that he was transporting the drugs to his brother, an Assistant United States Attorney in Philadelphia, for an analysis. He had found the drugs hidden in his home. Some time earlier he had permitted another individual, who was later convicted of murder, to "house sit" while Horvitz was out of town. During Horvitz' absence, numerous drug transactions allegedly occurred at his home, and the drugs Horvitz found were believed to be left over from that time. Horvitz basically asserted he was in innocent possession of the drugs and had not turned them over to local police due to conflicts over the recent occurrences at his house.
*547 Appellant initially contends the trial court erred in denying his motion to suppress. He argues that his initial stop and detention were unlawful. To establish that the stop of appellant was lawful, it must be shown that the stop was based on a founded suspicion that Horvitz was engaged in criminal activity. As described in State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978), a founded suspicion is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge. Coleman v. State, 333 So.2d 503 (Fla. 4th DCA 1976). The facts relied upon by the police officers as established at the motion to suppress were:
1) the appellant appeared nervous;
2) he purchased a one-way ticket to Philadelphia for cash;
3) his luggage consisted of only a pursesized shoulder bag and an attache case;
4) he appeared to notice the police officers; and
5) he left the terminal building and apparently abandoned his plans to depart.
Airport drug courier profile seizures have been the subject of extensive judicial consideration in this state and by the United States Supreme Court. See Carpenter v. State, 403 So.2d 1047 (Fla. 4th DCA 1981); Martinez v. State, 414 So.2d 301 (Fla. 4th DCA 1982); State v. Grant, 392 So.2d 1362 (Fla. 4th DCA 1981); State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979); United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); and Florida v. Royer, ___ U.S. ___, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), affirming Royer v. State, 389 So.2d 1007 (Fla. 3d DCA 1980).
In the most recent Royer opinion from the United States Supreme Court, it was at least made clear that the drug courier profile does not constitute probable cause and that during any investigative detention based on less than probable cause, the police must employ the least intrusive means available to dispel any suspicion they have that the individual is engaged in criminal activity.
In view of the cited authorities, the facts as outlined above are not sufficient to justify the initial stop; therefore, the action of the police officers constituted an illegal seizure. It is impossible to maintain that in view of all the circumstances surrounding the incident, Horvitz would have believed he was free to leave. He was surrounded by three police officers for questioning concerning illegal drugs. The agents had retained possession of his airline ticket and stated he could leave only if he would let them look inside his case. In response to a direct request the agents denied him the right to call an attorney. Even if it were established that the officers had a founded suspicion to stop the appellant, at the moment he mentioned that he wanted to talk to an attorney, the officers should have stopped all questioning and certainly should not have thereafter extracted an alleged consent to open the briefcase.
The appellant further maintains that his consent to search his baggage was not voluntary. Consent has been held to be involuntary where a defendant's ticket and identification were retained by the investigating officer. State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979). Horvitz' ticket was retained by the police, who also made a deal with the appellant  "Open your bag, and you can leave." Certainly, in the face of a de facto denial of a request to leave and for counsel, said consent was not voluntary.
Furthermore, the consent, whether voluntary or involuntary, was limited to "looking" rather than "touching" items. Thus, the officer's smelling of the Christmas package went beyond the parameters of any consent.
We thus conclude the trial court erred in denying the motion to suppress. All other points are found to be without merit or *548 unnecessary to this decision. The judgment below is reversed and the matter remanded to the trial court with instructions to discharge the defendant.
REVERSED.
ANSTEAD, J., concurs.
HERSEY, J., concurs specially with opinion.
HERSEY, Judge, concurring specially.
I concur in the result because the police officers violated appellant's constitutional rights by continued questioning after he requested an attorney. Moreover, the consent to search was involuntary, based as it was on the officer's retention of appellant's airline ticket.
I do not, however, subscribe to the majority conclusion that the agents had no "founded suspicion" much less "probable cause" to effect a "Terry" stop of Mr. Horvitz. Was it then simply a lucky guess that he carried a substantial quantity of contraband in his attache case? Are the 77 of 96 encounters at the Detroit Metropolitan Airport, based on the drug courier profile, which netted drugs, but another example of astoundingly fortunate guesswork? See United States v. Van Lewis, 409 F. Supp. 535, 538 (E.D.Mich. 1976), aff'd, 556 F.2d 385 (6th Cir.1977), cert. denied, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 754 (1978). Such a conclusion is not mandated by the Supreme Court in Florida v. Royer, ___ U.S. ___, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), aff'g Royer v. State, 389 So.2d 1007, 1015 (Fla. 3d DCA 1980) (en banc), which indicates that a similarity to the drug courier profile is sufficient to constitute an articulable suspicion.
The point is that innumerable law enforcement officers, through personal experience, have observed that, while drug couriers do things that innocent, honest travelers do  such as pay in cash, drug couriers also tend to do things that innocent, honest travelers do not ordinarily do  such as travel under an assumed name. Is it either logically reasonable or philosophically justifiable for a judge or several judges to conclude that a combination of such observable factors are "clearly not sufficient to provide the reasonable suspicion of criminal activity necessary to justify ... ." a seizure. See Royer, ___ U.S. at ___, 103 S.Ct. at 1332 (Brennan, J., concurring). I suggest not. I suggest, instead, that a sufficient (at present undetermined) correlation between the activities of the traveler and the drug courier profile should be considered reasonable suspicion for a stop and search.
I suggest further that reference to the drug courier profile, set out in detail in United States v. Ballard, 573 F.2d 913, 914 (5th Cir.1978), has become the kiss of death to any prosecution based upon contraband obtained by search and seizure involving a traveler. More importantly, perhaps, the Royers of the world, and the Horvitzs, have been assured that they may stuff their attache cases with contraband and proceed, unencumbered by luggage, to the airport where they may nervously buy one-way tickets to a drug outlet city, paying the fare in small bills from a huge bundle of cash, use assumed names, give fictitious telephone numbers and thereby ply their trade without any fear of interference or apprehension. Upon being approached by an officer of the law they may ignore him and his questions with absolute impunity! In short, the law is rendered impotent to apprehend even the most blatant, obvious or amateurish drug courier. The sole exception to this rule seems to be the availability of a drug sniffing canine and even the exception has its detractors. Compare Royer, ___ U.S. at ___, 103 S.Ct. at 1330 (Brennan, J., concurring) aff'g Royer, 389 So.2d at 1007, with United States v. Beale, 674 F.2d 1327, 1335 (9th Cir.1982), U.S. appeal pending.
Certainly constitutional rights must be diligently and zealously protected in these crime-wracked times where the potential for vigilante style justice thrusts ever nearer the surface, threatening to crack the *549 thin, albeit fairly resilient, veneer of civilized society. Nonetheless, the founding fathers would almost as certainly be astounded and chagrined were they here to observe that the rights of those who voluntarily choose to live outside the law are protected ofttimes at the expense of those for whom the rule of law has come to exemplify an ordered society.
It is not necessary to hedge on constitutional issues to bring balance back into the system. Courts need only to apply common sense and to exercise judicial restraint in this area, such as by recognizing, as does the ordinary reasonably prudent man, that where there is smoke, there is fire.