510 So.2d 321 (1987)
Terrance BOSTICK, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-2409.
District Court of Appeal of Florida, Fourth District.
April 8, 1987.
On Motion for Rehearing July 22, 1987.
Kenneth P. Speiller and Max P. Engel of Law Offices of Max P. Engel, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
AFFIRMED.
LETTS, WALDEN and STONE, JJ., concur.

*322 ON PETITION FOR REHEARING
PER CURIAM.
The Petition for Rehearing is denied on the authority of Rodriguez v. State, 494 So.2d 496 (Fla. 4th DCA 1986) and Elsleger v. State, 503 So.2d 1367 (Fla. 4th DCA 1987). Notwithstanding this affirmance, we deem the cause now before us to be of great public importance and we certify the following question to the Supreme Court:
MAY THE POLICE WITHOUT ARTICULABLE SUSPICION BOARD A BUS AND ASK AT RANDOM, FOR, AND RECEIVE, CONSENT TO SEARCH A PASSENGER'S LUGGAGE WHERE THEY ADVISE THE PASSENGER THAT HE HAS THE RIGHT TO REFUSE CONSENT TO SEARCH?
WALDEN and STONE, JJ., concur.
LETTS, J., concurs in part and dissents in part.
LETTS, Judge, dissenting in part:
I concur in the decision to certify the question. I otherwise dissent.
This appeal evolves from police activity on a bus in the form of a random request for consent to search a passenger's luggage without articulable suspicion. The trial judge, though he orally expressed reservations, denied, without comment, the motion to suppress the evidence of contraband discovered in the luggage. Inherently, the trial judge's order was tantamount to a holding that a consensual police encounter took place rather than an illegal intrusion equivalent to a seizure. I dissent.
Two police officers, complete with badges, insignia[1] and one of them holding a recognizable zipper pouch, containing a pistol, boarded a bus bound from Miami to Atlanta during a stopover in Fort Lauderdale. Eyeing the passengers, the officers, admittedly without articulable suspicion, picked out the defendant passenger and asked to inspect his ticket and identification. The ticket, from Miami to Atlanta, matched the defendant's identification and both were immediately returned to him as unremarkable. However, the two police officers persisted and explained their presence as narcotic agents on the lookout for illegal drugs. In pursuit of that aim, they then requested the defendant's consent to search his luggage. Needless to say, there is conflict in the evidence about whether the defendant consented to the search of the second bag in which the contraband was found and as to whether he was informed of his right to refuse consent. However, any conflict must be resolved in favor of the state, it being a question of fact decided by the trial judge.
I am uncomfortable with a scenario such as this and I have extensively studied two United States Supreme Court opinions, cited hereafter, in search of counsel and guidance. With the utmost of respect, I have some trouble reconciling these two decisions and I do not find them entirely consistent with one another. Certainly, their results are opposite. However, while I am fully conscious of, and will quote from, United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), I am primarily persuaded by Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), which is the most recent of the two and which I believe supports my conclusion.
Royer teaches that there is no litmus test for distinguishing between a consensual encounter and a seizure in violation of the Fourth Amendment. Accordingly, the endless variations in facts and circumstances of each case make it "unlikely that the courts can reduce to a sentence or a paragraph a rule that will provide unarguable answers... ." Id. 103 S.Ct. at 1329. However, the circumstances of Royer do provide a basis for comparison with the controversy now before us.
The facts of Royer were:
1. The initial approach was by plainclothes policemen in an airport concourse, not on an actual plane.

*323 2. The police displayed no weapons.
3. The defendant's ticket and I.D. did not match.
4. The defendant became noticeably nervous during the conversation.
5. The defendant was told he was suspected of transporting narcotics.
6. The defendant's ticket and I.D. were not returned to him making it clear, as the Royer court held, that he was not free to leave.
7. The defendant was requested to and did accompany the two policemen to a small enclosed room (described by law enforcement as "a large storage closet") equipped with a desk and two chairs.
8. His checked luggage was retrieved without his consent and brought to the small room.
9. He did not give his consent to the search when first approached ("on the spot," as defined by the Royer court), but only after being taken to the room and interrogated.
By contrast, the facts of the instant case reveal that:
1. The initial approach in Fort Lauderdale was by uniformed police on the actual bus in which the defendant was in transit from Miami to Atlanta.
2. There was display of a weapon.
3. The defendant's ticket and I.D. did match.
4. There is nothing in the record denoting nervousness on the defendant's part.
5. The defendant was not told that he was suspected of transporting narcotics.
6. The defendant's ticket and I.D. were immediately returned to him.
7. The defendant was not requested to leave the bus or to accompany the police officers anywhere.
8. No checked luggage was retrieved.
9. The defendant gave his consent to search "on the spot."
Obviously, some of the above enumerated facts in Royer favor a consensual encounter while others reflect a seizure. In the same vein, factors pro and con exist in the case at bar. Yet, it is clear that in Royer the overriding consideration was whether the defendant could reasonably believe he was free to leave. In deciding he was not free to do so, the Royer court, quoting our Third District Court of Appeal, made much of the confinement in the small room as "an almost classic definition of imprisonment" Id. 103 S.Ct. at 1323. The Royer court further cited as evidence that he was not free to leave, the failure by the police to return the defendant's ticket and their retrieval and possession of his luggage. True, in the case at bar, there was no retention of a ticket nor was any of the luggage impounded prior to the request for consent to search it. Further, there was obviously no interrogation room to which the defendant was transported. Nevertheless, as the court held in Mendenhall, the test for the presence of a seizure is whether "in view of all of the circumstances surrounding the incident a reasonable person would have believed he was not free to leave." Id. 100 S.Ct. at 1877. In helping to define circumstances which would indicate the passenger was not free to leave, Mendenhall cites examples, among others, such as the presence of more than one officer, the display of a weapon, and in a subsequent paragraph, the wearing of uniforms. Id. at 1877. All three of these examples, illustrative of seizure, are present in the instant case. Moreover, my version of common sense tells me that a paid and ticketed passenger will not voluntarily forfeit his destination and get up and exit a bus in the middle of his journey, during a temporary stopover, while two policemen, one with a pouched gun in his hand, are standing over him in a narrow aisle asking him questions and requesting permission to search his luggage. It is not a question of whether he actually was free to leave, as all of us trained lawyers know he was. The test is whether a layman would reasonably be expected to believe he was free to leave under these circumstances. I conclude he would not.
My having decided that the defendant was not free to leave, it follows that the police questioning under the facts of this case constituted an illegal detention and a seizure. In the words of the Royer court, since the defendant "was being illegally *324 detained when he consented to the search of his luggage, we agree that the consent was tainted by the illegality and was ineffective to justify the search." Id. 103 S.Ct. at 1329.
Nor do I find that the State has sustained its burden of establishing that any such taint was rendered harmless by a subsequent unequivocal break in the chain connecting the original seizure with the ensuing consent to search. On the contrary, the consent to the search was given immediately upon the heels of the illegal detention and no measurable break in the chain took place. See Elsleger v. State, 503 So.2d 1367 (Fla. 4th DCA 1987), and Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
In conclusion, as I have already said, quoting from the United States Supreme Court on the subject, there is no available litmus test and my dissenting opinion is therefore confined to the totality of the facts and circumstances now before this court.
I WOULD REVERSE.
NOTES
[1] Their dress was "casual" over which they donned clearly marked "raid" jackets before entering the bus.