510 So.2d 1133 (1987)
STATE of Florida, Appellant,
v.
Anthony CARROLL, Appellee.
No. 4-86-2642.
District Court of Appeal of Florida, Fourth District.
August 5, 1987.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Amy L. Diem, Asst. Atty. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Thomas F. Ball III, Asst. Public Defender, West Palm Beach, for appellee.
PER CURIAM.
AFFIRMED.
WALDEN, J., concurs.
*1134 GLICKSTEIN, J., concurs specially with opinion.
STONE, J., concurs with opinion.
GLICKSTEIN, Judge, concurring specially.
I write to inform the bench and bar of the facts in this case and my individual perception of their legal significance.
The trial court's order, as amended, here being affirmed without opinion, granted the defendant's motion to suppress and said:
Officer Daniel Henry from the West Palm Beach Police Department testified that he was part of a tactical team which checked the Greyhound Bus Station looking for people who might be acting as couriers for drugs northbound. He, together with Officer Hernandez and a dog trained to sniff for drugs would visit the bus station on a random basis for the purpose of checking northbound buses.
On this particular occasion at around midnight, they boarded a bus that was stopped in West Palm Beach and bound for Los Angeles. They were not in uniform but they had their badges prominently displayed. Their practice was to look for people that appeared to be suspicious or unduly nervous. When such a person was located, they would then engage that individual in conversation asking where they were bound and other questions thought to be pertinent. Mr. Carroll apparently fit this category.
In this particular case they also asked for Mr. Carroll's driver's license which they kept for the duration of the conversation.
Officer Henry testified that he obtained the oral consent of Mr. Carroll to look through baggage that was on the luggage rack overhead. Officer Henry testified that he was aware his Department had a written Consent to Search form but that he didn't feel it was necessary to use such a form because it would take time and they couldn't do it for all passengers on board or something to this effect.
The prospect of being a seated passenger on a commercial public transportation vehicle and seeing police officers come on board with their badges prominently displayed checking each passenger is an intimidating and coercive situation in and of itself.
I find that if consent was given in this case it was coerced by the situation I have just described. Nor do I find a founded suspicion. Horvitz v. State, 433 So.2d 545 (4th DCA 1983); Gorney v. State, 409 So.2d 220 (4th DCA 1982).
A seemingly identical situation  at least to this writer  arose in Rodriguez v. State, 494 So.2d 496 (Fla. 4th DCA 1986) wherein, as reflected by the briefs, the law enforcement officers approached, at random, a passenger on a bus. A number of appellate judges apparently see no legal difference in approaching random passengers on board buses, trains and airplanes which are prepared to depart from the station or airport and random passengers still in the station or airport who have not boarded. I disagree with them, but can point to no reported opinion which discusses and recognizes the difference  a fact that others could assert to be the best proof of there being none. The trial court expressly said in Rodriguez that there was no difference; and this court summarily approved the denial of the motion to suppress but reversed on other grounds. Accordingly, it provides no principle of law on that point.
I find such interference with individual privacy repulsive and I disagree with the suggestion that it is an "encounter". To me, it is a "stop"; and I believe the trial court here felt the same way. Moreover, the so called "encounter" here not only is identical to Rodriguez, but also is an inevitable factual extension of Snider v. State, 501 So.2d 609 (Fla. 4th DCA 1986), in which this writer dissented. The last paragraph of that dissent recites the following:
Occasionally the price we must pay to make innocent persons secure from unreasonable search and seizure of their persons or property is to let an offender go. Those who suffered harassment from King George III's forces would say *1135 that is not a great price to pay. So would residents of the numerous totalitarian and authoritarian states of our day.
Id. at 610 (Glickstein, J., dissenting).
As the facts in this case reflect, we also have a situation in which the officers retained the passenger's driver's license, which is just like U.S. v. Thompson, 712 F.2d 1356 (11th Cir.1983) and similar to Florida v. Rover, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) and State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979). Accordingly, the trial court found there was no "consent" to the search.
STONE, Judge, concurring.
I concur separately in order to comment on the issue discussed in my colleague's concurring opinion. It should not be inferred that we depart from Rodriguez v. State, 494 So.2d 496 (Fla. 4th DCA 1986) by affirming the order suppressing the evidence in this case. Nor should it be assumed that we agree with the dissent in Snider, 501 So.2d 609. The question of consent is an issue of fact to be determined by the trial judge after taking into consideration the totality of all the circumstances. Elsleger v. State, 503 So.2d 1367 (Fla. 4th DCA 1987); Pastor v. State, 498 So.2d 962 (Fla. 4th DCA 1986); Younger v. State, 433 So.2d 636 (Fla. 5th DCA), rev. denied, 440 So.2d 354 (Fla. 1983). Cf. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229, (1983); United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Denehy v. State, 400 So.2d 1216 (Fla. 1980); St. John v. State, 363 So.2d 862 (Fla. 4th DCA 1978).