515 So.2d 286 (1987)
Juan ALVAREZ, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-1687.
District Court of Appeal of Florida, Fourth District.
October 21, 1987.
Rehearing Denied, Application of Question Denied, Stay Denied November 25, 1987.
*287 Oliver Addison Parker of Law Offices of Morton & Parker, Fort Lauderdale, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, Noel A. Pelella and Barry Weisman, Asst. Attys. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
This is an appeal challenging the trial court's denial of a motion to suppress physical evidence. At issue is the legality of a search of personal luggage executed by the police after boarding a sleeping car of a passenger train about to depart, entering a private sleeping compartment and securing consent to search from the occupant. We reverse.
Juan Alvarez entered a plea of nolo contendere to the charge of trafficking in cocaine in an amount of 400 grams or more, reserving his right to appeal the denial of his motion to suppress. State v. Ashby, 245 So.2d 225 (Fla. 1971). In its order denying suppression, the lower court made detailed findings of fact, which may be summarized as follows. On January 14, 1986, Broward County Sheriff's Detectives Joseph Nutt and Vicki Cutcliffe boarded the sleeping cars of a northbound Amtrak train *288 during its stop at the Fort Lauderdale station, with the purpose of investigating possible drug trafficking activity. The officers had no warrant to search any part of the train and no articulable reason to believe that any passenger on the train might be transporting illegal drugs. The officers knocked on the door of the private sleeping compartment occupied by Alvarez, who was lying in bed in his stocking feet. After he opened the door, the officers positioned themselves in the doorway partially blocking the exit. The officers then identified themselves and requested and obtained Alvarez' train ticket and identification. Although the trial court did not render a specific finding of fact on this point, Alvarez' testimony was that Nutt never returned the ticket and identification to him, and the testimony of the police officers is silent as to whether they were ever returned. Officer Nutt then explained that he was looking for persons who were illegally transporting drugs, and requested Alvarez' permission to search his luggage for that purpose. Alvarez was informed that he had the right to refuse permission for the search. Thereupon, Alvarez, who is a native Spanish speaker with some knowledge of English, consented to the request to search his luggage. The officers then seized Alvarez' luggage and in searching it came upon a sealed opaque package, which when opened, revealed the cocaine that is the subject of this prosecution and the motion to suppress. The lower court denied appellant's motion to suppress, expressly finding that the actions of the police constituted a voluntary encounter in a public place and that consent had been established "by a preponderance of the evidence."

MEASURE OF PROOF OF CONSENT
We preface our discussion with a few observations about consent searches generally. The state has the burden of proving legal justification for any search conducted without a warrant. When consent to search is relied on as the justification, the state must not only prove that consent was given, but must also prove such consent was freely and voluntarily given as an independent act of free will and not in mere acquiescence to police authority. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The validity of a consent to search is usually a fact issue to be judged according to the traditional definition of voluntariness. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). An inquiry into the voluntary character of consent should include all of the surrounding circumstances, including the conduct of the law enforcement personnel involved and the ability of the particular defendant to understand and rationally respond to the request for consent. Schneckloth, 412 U.S. at 229, 93 S.Ct. at 2049, 36 L.Ed.2d at 864. Relevant, although not controlling, circumstances include a person's awareness of the right to refuse consent and the reasonable likelihood of a person consenting to a search that the person knows will reveal contraband. See Racz v. State, 486 So.2d 3 (Fla. 4th DCA 1986).
Absent any improper police conduct prior to securing an alleged consent, the consent issue should be determined by the greater weight of the evidence presented to the trial court. However, consent purportedly obtained after prior illegal action by the police, such as an invalid detention or arrest or illegal search, must be particularly scrutinized, because such police action presumptively taints and renders involuntary any consent subsequently obtained. Norman v. State, 379 So.2d 643, 646-47 (Fla. 1980); Bailey v. State, 319 So.2d 22, 28 (Fla. 1975). Logically, the closer the connection between a consent and any improper conduct by the police, the less likely a consent will be found to be freely and voluntarily given, as opposed to being the natural consequence of the police misconduct. This court has described the state's burden in the case of antecedent police misconduct, as a requirement to prove consent by clear and convincing evidence. Cf. Elsleger v. State, 503 So.2d 1367 (Fla. 4th DCA 1987). Without intending to modify or alter any prior holding, we underscore that the essential purpose of the clear and convincing evidence requirement is to place the burden on the state to *289 demonstrate an "unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action." Norman, 379 So.2d at 647; see also State v. Blan, 489 So.2d 865 (Fla. 1st DCA 1986); Tennyson v. State, 469 So.2d 133 (Fla. 5th DCA 1985).

ENCOUNTER OR INTRUSION?
The state does not contend that the police had any valid basis to detain Alvarez. Rather, the state contends that the police officers' sweep of the sleeping car and contact with Alvarez were authorized under the concept of the "voluntary encounter," first enunciated by Justice Stewart in United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), and subsequently adopted by the majority of the Supreme Court in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Accordingly, the state submits that the trial court was not required to find that consent was proven by clear and convincing evidence.
As the Supreme Court has indicated, there are no easy answers to the issue before us:
We do not suggest that there is a litmus-paper test for distinguishing a consensual encounter from a seizure or for determining when a seizure exceeds the bounds of an investigative stop. Even in the discrete category of airport encounters, there will be endless variations in the facts and circumstances, so much variation that it is unlikely that the courts can reduce to a sentence or a paragraph a rule that will provide unarguable answers to the question whether there has been an unreasonable search or seizure in violation of the Fourth Amendment.
Florida v. Royer, 460 U.S. at 506-07, 103 S.Ct. at 1329. Mendenhall has been held to sanction brief voluntary encounters between the police and citizens in public places such as transportation terminals. See Jacobson v. State, 476 So.2d 1282, 1285 (Fla. 1985). Such encounters do not trigger the protections of the Fourth Amendment, and are not unlawful even though the police may lack reasonable suspicion of criminal activity. This voluntary encounter is to be distinguished from the brief investigatory detention permitted when the police have a reasonable suspicion of criminal activity. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Wright v. State, 418 So.2d 1087, 1089 (Fla. 1st DCA 1982), rev. denied, 426 So.2d 29 (Fla. 1983). In Mendenhall, the court set out an objective test for determining the legitimate boundaries of a permissible voluntary encounter:
We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.
446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509 (footnote omitted); see also Nease v. State, 484 So.2d 67, 69 (Fla. 4th DCA), rev. denied, 494 So.2d 1153 (Fla. 1986). This test is a paraphrase from the court's earlier holding in Terry, that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person," 392 U.S. at 16, 88 S.Ct. at 1877, and the Fourth Amendment requires that seizure to be justified and reasonable.
Taking these statements at face value, it would appear that the encounter at issue was not voluntary, since Alvarez was not in a public terminal, but rather had already boarded the train and begun his journey. To leave in the sense contemplated by Terry and Mendenhall would have required him to abandon the comfort of the sleeping berth he had paid for, and, were he to leave the train entirely, to miss his destination. His only other option was to ask the officers to leave. For the reasons set out below, we hold that the encounter involved herein was not authorized by the decision in Mendenhall, but rather was an unjustified intrusion upon Alvarez' privacy and the functional equivalent of detention for purposes of determining the voluntary nature of the subsequent consent.

PRIVACY INTERESTS
A basic consideration in determining the bounds of permissible police contact *290 with a citizen is whether any invasion of privacy is involved. The court below found that the sleeping compartment was a "public place" in which Alvarez had no right of privacy. We cannot agree. In Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the Supreme Court unanimously held that an ordinance requiring persons to identify themselves to police officers was unconstitutional as applied to persons not reasonably suspected of criminal activity. In his opinion for the court, then-Chief Justice Burger provided some guidance to those trying to draw the line between permissive encounters and unlawful intrusions:
A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field.
443 U.S. at 51, 99 S.Ct. at 2640. In our view, a sleeping compartment is no less private than a hotel room, United States v. Lyons, 706 F.2d 321, 326 (D.C. Cir.1983), a clothing store fitting room, State v. McDaniel, 44 Ohio App.2d 163, 337 N.E.2d 173 (1975), or a restroom in a public park, People v. Triggs, 8 Cal.3d 884, 106 Cal. Rptr. 408, 506 P.2d 232 (1973), each of which has been held to provide its occupant the right to be shielded from entry by the police. A person who reserves a private berth on a sleeping car should be able to legitimately expect that his or her privacy will not be intruded upon, with the possible exception of a brief entry by a ticket collector, or encounters in the passageway with other similarly ticketed passengers or train personnel. The right of access to the sleeping car is conditioned upon the purchase of an appropriate ticket. This is in sharp contrast to the train terminal where anyone is free to come and go.

OTHER CONSIDERATIONS
As noted above, the Supreme Court has held that the police have no right, unless they have reasonable suspicion of criminal activity, to require a citizen to provide identification. Brown v. Texas. Other courts have specifically held that a Fourth Amendment seizure occurs where the police obtain and retain a person's travel ticket or identification, see Horvitz v. State, 433 So.2d 545 (Fla. 4th DCA 1983); State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979); United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir.1984); or physically block the individual's path, see United States v. Berry, 670 F.2d 583, 597 (5th Cir.1982); United States v. Bowles, 625 F.2d 526 (5th Cir.1980), prior to a search. Here, the police officers stood in a position at least partially blocking the only exit from the compartment and, more importantly, demanded and seized Alvarez' ticket and identification, there being no indication in the record that these items were ever returned. Under the decisions set out above, Alvarez was being detained while the police held his ticket and identification.
The physical circumstances in which questioning takes place have also been considered as an element in the determination of whether an individual has been seized. See United States v. Black, 675 F.2d 129, 134-35 (7th Cir.1983). The unannounced entry of two armed police officers into a train sleeping compartment is a far cry from the standard airport terminal procedure described in Mendenhall. Cf. Royer, 460 U.S. at 502, 103 S.Ct. at 1327, 75 L.Ed.2d at 240 (defendant was functionally under arrest when brought to closet-like investigation room with two officers). It is also significant in this context that the officers confronted Alvarez with their suspicion that he might be involved in drug trafficking. See United States v. Berryman, 717 F.2d 651, 656 (1st Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 125 (1984); Berry, 670 F.2d at 597.
Lastly, we do not agree with the state's contention that Mendenhall serves as a carte blanche for the police to systematically initiate investigative contacts with citizens in any setting, consciously and deliberately without reasonable suspicion of criminal activity, as long as they refrain from the use of overt coercion. As Chief Justice Burger has stated:
In the absence of any basis for suspecting appellant of misconduct, the balance *291 between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference. The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits.
Brown v. Texas, 443 U.S. at 52, 99 S.Ct. at 2641 (citation omitted). Taken to its extreme, the state's rationale could just as easily support an arbitrary decision by police to go door to door in a residential neighborhood asking permission to search for obscene or other illicit materials, or to set up a booth on the sidewalk at which all passersby would be requested to undergo a frisk for unlicensed weapons. We do not believe such wholesale intrusions were within the contemplation of the Supreme Court when it authorized a limited exception to the probable cause requirement for brief, investigatory detentions in Terry, or when it described certain kinds of police-citizen encounters in public places as being outside the scope of the Fourth Amendment in Mendenhall. For it is not overt coercion alone that interferes with the right to be free of unreasonable searches and seizures, but also the specter that police procedures like the one involved here might become so pervasive as to deny citizens their right of privacy, "the right to be let alone." See Winston v. Lee, 470 U.S. 753, 105 S.Ct. 1611, 1615-16, 84 L.Ed.2d 662 (1985) [quoting Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting)]. The Florida Supreme Court has recently underscored this concern in a decision holding that police surveillance of the yards of private homes by hovering helicopters constituted an invasion of privacy:
It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure.
Riley v. State, 511 So.2d 282, 289 (Fla. 1987) [quoting Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886)].
In light of our holding that the intrusion upon Alvarez was not authorized by Mendenhall and that he was detained without justification under the Fourth Amendment, it is clear that the lower court applied the incorrect legal standard to the proof of consent. As discussed earlier in this opinion, there can be no valid consent unless the state can show, by clear and convincing evidence, an unequivocal break in the chain of illegality between the prior unlawful detention and the purported consent. Our review of the record and the findings of fact of the trial court reflect a lack of such clear and convincing evidence. Accordingly, we reverse this case and remand to the trial court with directions that the motion to suppress be granted and that the charges against the appellant be dismissed since the state is in agreement that the suppression issue is determinative of the outcome of the case.
DELL and GUNTHER, JJ., concur.