WEBSTER, PETER D.,
Associate Judge, dissenting.
On June 17, 1986, appellant was a ticketed passenger traveling on a Greyhound bus bound from Miami to Detroit. Around 6:00 p.m., the bus made a scheduled stop at the Greyhound Bus Station in Fort Lauderdale. Appellant did not get off the bus; she remained in her seat near the back of the bus. Two deputies from the Broward County Sheriffs “domestic interdiction unit” boarded the bus, while a third stationed himself outside. (The “domestic interdiction unit’s” assignment is to attempt to board all northbound buses and to obtain consents at random from as many passengers as time permits to search their luggage.) All three deputies were wearing jackets, sometimes referred to as “raid jackets,” clearly identifying them as law enforcement officers.
The two deputies walked to the back of the bus and began working their way forward, questioning people at random as they went. Eventually, they came to appellant. There was nothing in any way suspicious about appellant, and she did not appear nervous. One deputy, who spoke only English, attempted to address appellant first. When appellant did not appear to understand him, he asked the other deputy, who spoke Spanish, to question her. Both deputies displayed their badges. The second deputy then questioned appellant in Spanish, while standing in the aisle, opposite appellant’s seat. The first deputy stood behind appellant.
The deputy asked if appellant “had a moment to speak to” them, to which he said appellant responded, in Spanish, yes. He then asked where she was going, and she responded, Detroit. He asked if she had any luggage, and she responded, yes, pointing to two bags.
The deputy then explained that there was “a problem in South Florida with illegal narcotics being transported on these buses,” and that the Sheriff’s Office was seeking the public’s cooperation by obtaining their consent to search their luggage. He then asked appellant’s permission, to search her bags. (Appellant testified that she was told they had the right to search her luggage.) According to the deputy, he told appellant she had the right to refuse; however, appellant denied this. The deputy said that appellant’s response to his request was, “yes, if you want,” or “yes, if you like.” (Appellant testified that the bags were simply taken and opened, without any request.)
In one of appellant’s bags, a package was found, wrapped in plastic tape. One of the deputies punched a hole in the package, and found that it contained cocaine, at which time appellant was placed under arrest.
According to the deputies, appellant would have been allowed to get off the bus, had she desired to do so, at any time until the cocaine was discovered. However, it is undisputed that appellant was never told that she was free to leave, and appellant testified that she did not think she was free to leave after the deputies first approached her.
I have no real quarrel with the trial court’s finding that the state established by the greater weight of the evidence that *298 appellant’s consent to search her bags was voluntary, although, in my opinion, the question was a close one, and I might have decided it differently had I been the trier of fact. My disagreement with the trial court and with the majority opinion relates to their conclusion that the state was required to establish consent only by the greater weight of the evidence, rather than by clear and convincing evidence. In my opinion, the state did not establish by clear and convincing evidence that appellant’s consent was voluntary, as opposed to a mere acquiescence to police authority. Therefore, I believe that the conviction should be reversed.
I reach the conclusion that the state was required to establish consent by clear and convincing evidence because, in my opinion, appellant was illegally seized by the deputies, in violation of the fourth amendment to the United States Constitution, when they began to question her. See generally Alvarez v. State, 515 So.2d 286 (Fla. 4th DCA 1987). But see State v. Avery, 531 So.2d 182 (Fla. 4th DCA 1988) (en banc).
Both the trial court and the majority conclude that appellant was not seized for fourth amendment purposes. Instead, they find that nothing more than a permissible citizen encounter occurred. They seek to support this conclusion by reference to Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). However, I do not believe that either of those cases provides such support.
The Royer opinion is a plurality opinion, in which only four justices joined. The discussion by the plurality of the legality of the initial stop is pure dicta and, as Justice Brennan correctly points out, “it was wholly unnecessary to reach that question.” 460 U.S. at 509, 103 S.Ct. at 1330 (Brennan, J., concurring in the result). To the extent that the plurality opinion in Royer tells us anything about the distinction between a consensual encounter and an unlawful seizure, it is that every case must be decided on its peculiar facts, and that a critical factor in the analysis is whether there has been a sufficient “show of official authority such that ‘a reasonable person would have believed that he was not free to leave.’ ” 460 U.S. at 502, 103 S.Ct. at 1326 (quoting United States v. Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877 (opinion of Stewart, J.) (footnote omitted)).
The portion of the opinion in Mendenhall which addresses the issue of whether the initial stop was a permissible encounter or an unlawful seizure (Part II-A) represents the views of only two justices. Four members of the Court believed that the initial stop was an unlawful seizure (446 U.S. at 566, 571-73, 100 S.Ct. at 1883, 1885-87 (White, J., dissenting)); and three others found it an “extremely close” question, but concluded that, even if a seizure, it was justified because the agents had a reasonable suspicion that Mendenhall was engaging in criminal activity. 446 U.S. at 560, 100 S.Ct. at 1880 (Powell, J., concurring in part). Again, to the extent that Justice Stewart’s opinion in Mendenhall is of assistance, it is because it emphasizes that each case must be decided on its facts. Like the plurality opinion in Royer, Justice Stewart’s opinion in Mendenhall also stresses the importance of determining whether, under all of the circumstances, a reasonable person would have believed that he was not free to leave. 446 U.S. at 554, 100 S.Ct. at 1877.
This brings us to an analysis of the facts in this case. Appellant held a ticket to travel by bus from Miami to Detroit. As she was sitting on the bus during a scheduled stop in Fort Lauderdale, she was approached by two law enforcement officers, both of who were standing over her, and at least one of whom was blocking her exit. The officers began asking her questions. To conclude that, under such circumstances, a reasonable person would have felt free to get up, move around the officer and walk off the bus into a strange community a thousand miles from home is, I submit, absurd. As a member of this court has observed (in my opinion, correctly) in a similar case:
[M]y version of common sense tells me that a paid and ticketed passenger will *299 not voluntarily forfeit his destination and get up and exit a bus in the middle of his journey, during a temporary stopover, while two policemen, one with a pouched gun in his hand, are standing over him in a narrow aisle asking him questions and requesting permission to search his luggage.
Bostick v. State, 510 So.2d 321, 323 (Fla. 4th DCA 1987) (Letts, J., dissenting in part).
In my opinion, an unlawful seizure occurred here, the trial court’s contrary findings were not supported by substantial competent evidence, and its conclusion was clearly erroneous. Therefore, the state was required to establish consent to search by clear and convincing evidence. Because it failed to do so, I would reverse.