# IN RE: FORFEITURE OF $21,650.00 IN UNITED STATES CURRENCY

## Case No. 89-18429 (22)

Seventeenth Judicial Circuit, Broward County

June 20, 1990

### APPEARANCES OF COUNSEL

**Alan R. Soven, Esquire.**

**Peter Herman, Esquire.**

### OPINION OF THE COURT

ROBERT C. SCOTT, Circuit Judge.

### *ORDER DENYING MOTION TO SUPPRESS*

This Cause came to be heard upon the Claimant's Motion to Suppress. Upon the evidence presented, the court finds and determines as follows:

1. Where a motion to suppress an illegal search is at issue, the burden is on the moving party to make an initial showing that the search was invalid. When such a showing is made, the burden shifts to the State. This effectively places the ultimate burden of proof as to the validity of a warrantless search on the State. See *Black v State,* 383 So.2d 295 (Fla. 1st DCA 1980); *State v Hinton,* 305 SO.2d 804 (Fla. 4th DCA 1975).

Claimant met his initial burden by showing the absence of a search warrant. It then became incumbent upon the Petition (Florida, Department of Motor Vehicles) to prove the legality of the search. Based upon the following, the court concludes that Petitioner has met its burden of proof.

2. The law is well-settled that a search of private property conducted by state agents without a duly issued search warrant is per se unreasonable subject to only a few established and well-delineated exceptions. One of the recognized exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. See *Taylor v State,* 355 So.2d 180 (Fla. 3d DCA 1978). When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was freely and voluntarily given. *Ingram v State,* 364 So.2d 821 (Fla. 4th DCA 1978). Absent any police misconduct prior to securing an alleged consent, the consent issue is to be determined by the greater weight of the evidence presented at trial. However, consent obtained after prior illegal action by police, such as an invalid detention or arrest or illegal search, must be particularly scrutinized and the voluntariness of such consent must be proven by clear and convincing evidence. *Alvarez v State,* 515 So.2d 286 (Fla. 4th DCA 1987); *State v Fuksman,* 468 So.2d 1067 (Fla. 3d DCA 1985); *Norman v State,* 379 So.2d 643 (Fla. 1980).

3. In determining whether consent to a search was freely and voluntarily given, the trial court is required to assess the totality of the circumstances surrounding the consent. *Schneckloth v Bustamante,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Acosta v State,* 519 SO.2d 658 (Fla. 1st DCA 1988); *Mobley v State,* 335 So.2d 880 (Fla. 4th DCA 1976). Some of the circumstances considered by the courts in deciding if a consent was voluntarily given are: (1) whether the consent was obtained by use of coercion; (2) if there was actual consent or mere acquiescence to authority; (3) the age, intelligence, and education of the person giving consent; (4) any use of subterfuge to obtain consent; (5) whether the defendant had been advised that he could refuse to give consent. Although knowledge of one's right to refuse a

search without a warrant is a factor to be considered in determining whether the consent was obtained freely and voluntarily, there is no per se requirement that a defendant must be informed of such right. *Bailey v State,* 319 SO.2d 22 (Fla. 1975); (6) if the consent was a result of any illegal police activity. Illegal police activity which results in consent being given for a search to be conducted will "taint and render involuntary" the consent. Again, in this type of situation, the consent will be held to be voluntary only if there is clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior official illegal action. *Norman v State,* 379 So.2d 643 (Fla. 1980).

4. Thus, this court's inquiry is two-fold. First, it must be ascertained whether the initial intrusion and alleged detention of Claimant violated his Fourth Amendment rights; and second, if in fact the intrusion was unlawful, it must be determined whether the Petition, by clear and convincing evidence, has carried its burden of showing an unequivocal break between the prior illegal activity and Claimant's subsequent consent to the search.

5. In *Alvarez v State, supra,* the Fourth DCA discussed the distinction between a consensual voluntary encounter versus an investigatory detention permitted when the police have a reasonable suspicion of criminal activity. A later Florida Supreme Court case, *Bostick v State,* 554 So.2d 1153 (Fla. 1989) further discussed the *Alvarez* holding. Regarding voluntary encounters, it is well settled law in Florida that police may interact on a voluntary basis with citizens without transgressing the requirements of the . Fourth Amendment. See *State v Davis,* 543 So.2d 375 (Fla. 3d DCA 1989). Voluntary consent searches operate on different rules than probable cause searches. With voluntary consent encounters, probable cause need not exist in order for an officer to ask for consent to search, and the lack of probable cause cannot form the basis for a motion to suppress evidence seized as a result of a consent search. In fact, the only challenge that can be made against this type of search is an attack upon the validity of the consent itself. See *Taylor v State,* supra; *State v Govea,* 514 So.2d 80 (Fla. 3d DCA 1987).

Claimant argues that the detention surrounding the search in question was unreasonable and unlawful, rendering it an investigatory detention rather than a voluntary consensual encounter. Claimant posits that he was, in effect, temporarily "seized" based on a lack of reasonable suspicion. There is no litmus-paper test for distinguishing a consensual encounter from a seizure or for determining when a seizure

226

exceeds the bounds of an investigative stop. In *United States v Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) and subsequently adopted by the majority of the Supreme Court in *Florida v Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the court set out an objective test for determining the legitimate boundaries of a permissible voluntary encounter: "We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

Upon consideration of the totality of the circumstances, the court finds no evidence indicating an unjustified intrusion amounting to the functional equivalent of an unlawful detention. Claimant's car was stopped for speeding. The initial stop was valid as a law enforcement officer is clearly entitled to stop a vehicle for a traffic infraction. Florida Highway Patrol Trooper Blum stated to Claimant that there was a problem with drugs flowing in and out of the State and asked if he had any objection to a search of the car and subsequently the briefcase. Claimant was not the driver and was not being subjected to arrest. Claimant's responses were "No" and "Go right ahead." There was no evidence offered at the suppression hearing by Claimant that he was coercively detained. At no point in time was there evidence that the encounter became non-consensual. Even accepting the worse case scenario, i.e. assuming arguendo that Claimant was unreasonably detained and that there was prior illegal police activity, any resulting taint would be dissipated as Petitioner has met its burden of proof by the higher standard of clear and convincing evidence that the consent was valid. Claimant offered no controverted evidence to rebut Petitioner's evidence that consent was freely and voluntarily made.

In conclusion, the court finds, based on the entire set of events leading up to the search of Claimant's briefcase, that under the applicable standard of proof, the search in question amounted to a valid voluntary consensual encounter. Accordingly, it is

ADJUDGED that Claimant's Motion to Suppress is DENIED.

DONE AND ORDERED in Fort Lauderdale, Florida on June 20, 1990.