700 So.2d 718 (1997)
John Mark DeLEON, Appellant,
v.
STATE of Florida, Appellee.
No. 95-05261.
District Court of Appeal of Florida, Second District.
September 10, 1997.
*719 Steve Pincket, Lakeland, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
QUINCE, Judge.
John DeLeon appeals his convictions for possession of methamphetamine, cannabis and drug paraphernalia. The trial court found that the contraband was recovered during a valid, consensual search and denied DeLeon's dispositive motion to suppress. DeLeon subsequently pleaded no contest. Because the contraband was seized while DeLeon was unlawfully detained, we reverse the denial of his motion to suppress.

Background
On April 6, 1996, DeLeon visited the home of a person believed to be harboring Carlton Carter (Carter), a criminal fugitive with outstanding felony warrants. During DeLeon's visit, at approximately 4:45 a.m., five law enforcement officers arrived at the home seeking to execute Carter's arrest warrants. An unidentified woman answered the door, at which time the officers identified themselves and advised her that they were looking for Carter. After they asked to "come in and look around for him," the officers were permitted to enter the home. Three of the five officers went in with their weapons drawna rifle, an MP-5 machine gun and a semiautomatic hand gun. Two officers remained outside to stop any persons attempting to leave.
Three officers testified that they were able to secure the house and determine that Carter was not on the premises within two to three minutes after entry. After confirming that Carter was not present, the officers undertook a weapons and narcotics search, allegedly at the homeowner's consent. They also obtained identification from each occupant of the house and performed warrant checks on them. However, the officers were in the house for approximately twenty minutes before requesting identification.
During the second phase of their search, the officers discovered a container in the garage containing empty plastic baggies and corners of plastic baggies which were identified as drug paraphernalia. Upon finding the container, FBI Agent Kerry Myers, who recognized DeLeon from a previous encounter, approached him and asked if he had any weapons or drugs in his possession. When DeLeon responded "No," Agent Myers requested his consent for a personal search. DeLeon gave his consent and Myers discovered a glass pipe concealed in his pants. Shortly thereafter, Detective Connor found a briefcase which DeLeon identified as his own. Connor then obtained DeLeon's consent to search the case and recovered marijuana and methamphetamine.

Validity of Detention
A trial court's determination of reasonable suspicion to conduct an investigatory stop or detention is subject to de novo review. Ornelas v. United States, 517 U.S. ___, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Saturnino-Boudet v. State, 682 So.2d 188 (Fla. 3d DCA 1996), rev. dismissed, 689 So.2d 1071 (Fla.1997). Based on our review of the record, we conclude that the evidence was insufficient to give rise to a reasonable suspicion to justify DeLeon's detention after the officers determined that the criminal fugitive was not on the premises. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)(an investigative detention must be temporary and last no longer than is necessary to effectuate its purpose and verify or dispel any suspicion of danger). Moreover, *720 in light of his unlawful detention, we find DeLeon's subsequent consent invalid.
In order to conduct a lawful investigatory stop or detention an officer must have an articulable, reasonable suspicion that the subject detained has committed or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Reynolds v. State, 592 So.2d 1082 (Fla.1992). Determining whether circumstances give rise to a reasonable or well-founded suspicion necessarily involves considering whether the challenged police action was justified at its inception and whether the action was reasonably related to circumstances which originally justified police interference. Reynolds, 592 So.2d at 1084.
In the present case, the police obtained consent to enter the residence for the purpose of searching for Carlton Carter. Thus, to ensure officer safety, temporarily detaining all the occupants of the house long enough to investigate the presence of the armed felon was reasonable and justifiable. However, there is no question that prolonged detention to conduct warrant checks and weapons and narcotics searches was unjustifiable and unrelated to the search for Carter. There is nothing in the record to indicate that Carter was the subject of the subsequent searches or that the officers remained on the premises for the purpose of questioning the occupants concerning Carter's whereabouts.
Three officers testified that they requested consent for the narcotics and weapons searches because of the way they found the house, i.e., instead of finding a dark house with sleeping residents, the occupants of house were awake and fully clothed, with all the lights on and the stereo playing in what Agent Myers described as a "party atmosphere." Other than finding this level of activity in a home at 4:45 in the morning, the officers were unable to articulate any reason to suspect criminal activity among the occupants of the home. Clearly the level of activity in the home was insufficient to give rise to the reasonable suspicion necessary to further detain DeLeon. See Tennyson v. State, 469 So.2d 133 (Fla. 5th DCA 1985)(defendant's continued detention after police had effected purpose for which they initially stopped defendant constituted illegal detention). The State alleges that DeLeon's motion to suppress was properly denied because he voluntarily consented to the search of his person and property. We disagree because under the facts presented here, the validity of DeLeon's consent is questionable at best.

Validity of Consent
While a warrantless search is generally lawful when conducted pursuant to a subject's voluntary consent, Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the State must prove that consent was given voluntarily, as an independent act of free will and not mere acquiescence to police authority. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229. When, as in this case, a defendant alleges that his consent resulted from coercion or intimidation, the court, in ascertaining the voluntariness of the consent, must consider all of the circumstances surrounding the encounter and determine whether the police conduct would have communicated to a reasonable person that he was not free to decline the officer's request or otherwise terminate the encounter. Bostick, 501 U.S. at 438, 111 S.Ct. at 2388, 115 L.Ed.2d at 396. Additionally, a thorough inquiry into the voluntariness of consent gives consideration to the lawfulness or unlawfulness of prior police conduct. Alvarez v. State, 515 So.2d 286 (Fla. 4th DCA 1987). Consent given after an unlawful detention, or other illegal police conduct is closely scrutinized because such conduct "presumptively taints and renders involuntary any consent subsequently obtained." Id. at 288. See also Norman v. State, 379 So.2d 643 (Fla.1980); Mitchell v. State, 558 So.2d 72 (Fla. 2d DCA 1990). The State only overcomes this presumption by presenting clear and convincing evidence to demonstrate an "unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action." Alvarez, 515 So.2d at 288.
There is a dearth of evidence in the record to rebut the presumption of involuntariness which arose from the prior illegal detention. The circumstances surrounding *721 this police encounter do not lead us to believe that a reasonable person would have felt free to decline the officer's request for consent. Furthermore, we do not believe that a reasonable person would be inclined to terminate the encounter by leaving the premises. We come to this conclusion based on the fact that two armed officers remained outside of the home to stop subjects attempting to leave, and the officers inside collected identification from each occupant of the house in order to check for outstanding warrants. Thus, the record does not support the State's contention that DeLeon's consent was voluntary.
Accordingly, we reverse the trial court's order denying the motion to suppress.
SCHOONOVER, A.C.J., and LAZZARA, J., concur.